MERS MIN: 100039032109121042

Gillette, Craig

# FIXED/ADJUSTABLE RATE NOTE WITH PAYMENT OPTIONS
(Five-Year Fixed ARM Hybrid Payment Option LIBOR 6-Month Index Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT MY MONTHLY PAYMENT CAN INCREASE OR DECREASE. HOWEVER, MY INTEREST RATE INCREASES AND DECREASES ARE LIMITED. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED DUE TO THE ADDITION OF UNPAID INTEREST TO PRINCIPAL (WHICH IS REFERRED TO IN THIS NOTE AS NEGATIVE AMORTIZATION), BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.

March 21, 2007          Las Vegas          NV
[Date]                  [City]             [State]

8409 Dry Cliff Cir
Las Vegas, NV 89128
[Property Address]

1. **BORROWER'S PROMISE TO PAY**

   In return for a loan that I have received, I promise to pay U.S.$330,650.00          (this amount, as it increases and decreases from time to time, is called "Principal"), plus interest, to the order of the Lender. The Principal amount may increase as provided in this Note, but will never exceed One Hundred Fifteen percent          of the original Principal amount I borrowed. The Lender is Quicken Loans Inc.          .
   I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**

   **(a) Interest Rate**

   Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will initially pay interest at a yearly rate of 6.500 %. This is my initial interest rate, which is fixed for the first 60 months of the term of this Note. Following the first 60 months of the term of this Note, the interest rate I will pay may change every 6 months as described below in this Section 2.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7 of this Note. Interest will be charged on the basis of a twelve-month year and a thirty-day month.

   **(b) Interest Rate Change Dates**

   The interest rate charged on my loan may change on the 1st day of April 2012 and on that day every 6 months thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. Although the interest rate may change every 6 months following the initial 60 months of the term of this Note, my monthly payment will be recalculated in accordance with Section 3.

   **(c) Interest Rate Limit**

   The interest rate I am required to pay at the first Interest Rate Change Date will not be greater than 11.500 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than One and No-Thousandths ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 11.500 %, or less than 2.250 %.

   **(d) The Index**

   Beginning with the first Interest Rate Change Date, the interest rate will be based on an index (the "Index"). The "Index" is the average of interbank offered rates for 6 month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 15 days before the Interest Rate Change Date is called the "Current Index."

EXHIBIT B



If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice. The most recent value of the substituted index, as announced from time to time, shall become the Index for purposes of Section 2 of this Note.

### (e) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding Two and One-Quarter                                             percentage points (  2.250 %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the interest rate limit in Section 2(c), this amount will be my new interest rate until the next Interest Rate Change Date.

### 3. PAYMENTS

#### (a) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first day of each month beginning on      May 1, 2007    . Each of these dates is called a "Payment Due Date." I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied as of the scheduled Payment Due Date and will be applied to interest before Principal. If, on      April 1, 2037     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   P.O. Box 553154, Detroit, MI  48255-3154   , or at a different place if required by the Note Holder. Principal, interest and charges are payable in lawful money of the United States.

#### (b) Minimum Payment; Amount of My Initial Monthly Payments

My "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with this Section 3(b), Section 3(d), or 3(e), below, as applicable. My Minimum Payment will be the monthly payment I am required to pay, although I may be permitted to choose one of the payment options in accordance with Section 3(d).

Each of my initial Minimum Payments will be in the amount of U.S. $ 964.40    , until a new Minimum Payment is required as provided below. This amount may change as described in Section 3(d) and Section 3(e).

My initial Minimum Payment will not be sufficient to pay interest at the interest rate as determined in accordance with Section 2. Each month that my Minimum Payment is less than the interest that has accrued on the Note during that period, the Note Holder will subtract the amount of my monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal (this is referred to as "**negative amortization**"). That deferred interest will also accrue interest at the interest rate determined in accordance with Section 2.

#### (c) Payment Change Dates

My monthly payment may change in accordance with Section 3(d) below beginning on the 1st day of May      2012           and on that day every   6   months thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(e) below requires me to pay the Full Payment as defined in Section 3(d)(iv) below. Each of these dates is also called a "Payment Change Date."

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(e) below.

#### (d) Calculation of Monthly Payment Changes and Payment Options

Subject to Section 3(e) below, I may have up to four payment options, each of which will result in changes to my monthly payment, as follows:

(i)     **Limited Payment.** Prior to the   61st   Payment Due Date, I must make at least a Limited Payment, as defined below. The Limited Payment is the amount of my initial Minimum Payment as described in Section 3(b) above. The Limited Payment is not based on the actual interest rate of this Note, but is based instead on an interest rate that is implied solely for



purposes of determining the Limited Payment (the "Implied Interest Rate"). Even though the Limited Payment is based on the Implied Interest Rate, interest on this Note will continue to accrue at the interest rate determined in accordance with Section 2. Furthermore, paying only the Limited Payment **will result in negative amortization**. Starting with the 61st Payment Due Date, or on the date that the Principal of my Note reaches the Maximum Amount, my Minimum Payment will become an Interest Only Payment or such greater payment as may be required by Section 3(e) below. In that event, I may no longer make a Limited Payment.

(ii)  **Interest Only Payment.** Prior to the 121st Payment Due Date, I may have the option of making an Interest Only Payment. An Interest Only Payment is the monthly amount allocated to interest based on a 30-day month and shall be calculated by multiplying the unpaid Principal of this Note by the applicable interest rate determined in accordance with Section 2, dividing by 360 and then multiplying the resulting number by 30. I will no longer have this payment option starting with the 121st Payment Due Date.

(iii)  **15-Year Amortizing Payment.** Unless I must make a Full Payment in accordance with Section 3(e), I may have the option of paying a 15-Year Amortizing Payment, which is the amount necessary to repay the remaining unpaid Principal in full within a 15 year period starting from the first Payment Due Date in substantially equal payments. This option is calculated on the assumption that the current interest rate, determined in accordance with Section 2, will remain in effect and unchanged until this Note is paid in full. However, the current interest rate may in fact change every sixth month following the first Interest Rate Change Date. I will no longer have this payment option starting with the 121st Payment Due Date.

(iv)  **Full Payment.** At all times during the term of this Note I will have the option of paying the Full Payment. Starting with the 121st Payment Due Date, I will be required to make the Full Payment. At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the remaining unpaid Principal in full on the Maturity Date in substantially equal installments at the interest rate, determined in accordance with Section 2, in effect during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment."

**(e) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115.00 % of the Principal amount I originally borrowed (the "Maximum Amount"). On the Payment Due Date that paying my monthly payment would first cause me to exceed the Maximum Amount, and continuing with each monthly Payment Due Date thereafter through the 120th Payment Due Date, I will instead pay a new monthly payment in an amount not less than an Interest Only Payment. The Interest Only Payment will be my new Minimum Payment. This means that my Minimum Payment may change monthly. This method of calculating my new Minimum Payment amount will remain in effect until the 120th Payment Due Date.

Starting with the 121st Payment Due Date, and continuing through my final payment, my new Minimum Payment will be a Full Payment.

4. **NOTICES OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any payment change, as required by applicable law or regulation. The notice will contain the new interest rate and/or the payment amount applicable to my loan. The notice will also include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

5. **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.



I may make a full prepayment or partial prepayments, without paying any prepayment charge. The Note Holder will use my prepayment to reduce the amount of Principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the amount or due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(a) Late Charges for Overdue Payments**

   If the Note Holder has not received at least the full amount of any Minimum Payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue Minimum Payment. I will pay this late charge promptly but only once on each late payment.

   **(b) Accrual of Interest on Unpaid Interest**

   In addition to any late charge described above, and at the option of the Note Holder, all accrued interest that is not paid when due, which is added to unpaid Principal, shall also bear interest at the same rate as the interest on the unpaid Principal balance.

   **(c) Default**

   If I do not pay at least the full amount of each Minimum Payment on the date it is due, I will be in default.

   **(d) Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not correct the default by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.

   **(e) No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(f) Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Such expenses include for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(a) above or at a different address if I am given a notice of that different address.



9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Craig A. Gillett_ 03/21/2007 (Seal)　　　　　　　　　　　　　　　(Seal)
Craig A. Gillette            Borrower                              Borrower

　　　　　　　　　　　　　　　(Seal)　　　　　　　　　　　　　　　(Seal)
WITHOUT RECOURSE                                                   Borrower
Pay To the Order of
**

QUICKEN LOANS, INC.
By _____ (Seal)　　　　　　　　　　　　　　　(Seal)
SCOTT JOHNSON                                                      Borrower
CAPTURE MANAGER

　　　　　　　　　　　　　　　(Seal)　　　　　　　　　　　　　　　(Seal)
Borrower                                                           Borrower

**WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR THE CERTIFICATEHOLDERS
STRUCTURED ASSET MORTGAGE INVESTMENTS II INC. BEAR STEARNS MORTGAGE  [Sign Original Only]
FUNDING TRUST 2007-AR5 MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-AR5